UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DAVID ARNOLD NELSON GRIGGS, a minor, ) | |
| by and through DAVID ARNOLD GRIGGS, as ) | |
| Natural Parent and Next Friend, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:04-CV-059 |
| ) | |
| FORT WAYNE SCHOOL BOARD, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

### I. INTRODUCTION AND PROCEDURAL BACKGROUND

After school administrators forbade David Arnold Nelson Griggs from wearing a particular T-shirt to school, he brought this 42 U.S.C. § 1983 suit against the Fort Wayne School Board and various other defendants (collectively, "the Board"), alleging violations of the First Amendment and other constitutional provisions. Broadly stated, he advanced two claims: (1) that, under the First Amendment, the Board could not prohibit him from wearing his T-shirt to school; and (2) that the provision of the Board's Student Rights and Responsibilities Code which purportedly barred his shirt was unconstitutional. After discovery and cross-motions for summary judgment, the Court gave him a partial victory, allowing him the narrow relief of wearing his T-shirt, but rejecting his broader claim against the dress code. (*See* Docket # 64.)

Now before the Court is Griggs's request for $39,491.65 in attorney fees and costs. (Docket # 72, 74, 76, 78.) After reviewing the record and the relevant law, the Court finds that Griggs's request should be GRANTED, but only in the amount of $14,665 in attorney fees and $1,500.80 in costs.

## II. STANDARD OF REVIEW

In federal court, a prevailing party is entitled to recover "costs other than attorneys' fees . . . as of course." Fed. R. Civ. P. 54(d). Under 42 U.S.C. § 1988, a prevailing party in a § 1983 action may also recover "a reasonable attorney's fee as part of the costs."

Courts use the well-known "lodestar" method to determine a reasonable amount of fees. *E.g., People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996); *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983). Under this method, the court first determines the "lodestar" by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *People Who Care*, 90 F.3d at 1310. The court may then adjust this award based on various factors, *see id.* at 1310 n.1, the "most critical" of which is the degree of success obtained by the movant, *Hensley*, 461 U.S. at 436. The movant bears the initial burden of documenting its fees to the satisfaction of the court; once it has done so, those fees are presumptively appropriate unless challenged by the opposing party. *Tomazzoli v. Sheedy*, 804 F.2d 93, 96 (7th Cir. 1986).

## III. DISCUSSION

### A. Setting the Lodestar

The Board does not dispute that Griggs is a "prevailing party" who is entitled to recover fees and costs. Nor does the Board contend that the claimed hourly rate, $175, is excessive. However, the parties vigorously dispute the number of hours reasonably expended by the four lawyers involved with Griggs's case. In addition to filing lengthy briefs discussing the broader legal issues involved, the parties have attempted to aid the Court by making line-by-line notations directly on the time sheets of Griggs's attorneys concerning the propriety of individual entries. (*See* Docket # 83, Ex. 4.) The discussion below makes liberal use of those time sheets,

referring to them by page and date, as a guide for analyzing the issues and totaling the allowable hours.

*Page 1*

•        8/11/03 (mistakenly labeled on time sheet as "4/11/03"): This entry (like many others below) is related to a communication between Griggs's principal attorney, John Drier, and the Rutherford Institute, a nonprofit organization that referred the case to Drier.  The majority of these entries appear to reflect time spent working out the division of responsibilities and fees between Drier and Rutherford, or reflect Drier giving status updates to Rutherford.  Such time was necessitated only by Drier's arrangement with Rutherford for handling the case and not for the actual prosecution of the case; in other words, it was not "reasonably expended."  *People Who Care*, 90 F.3d at 1310.  Thus, many of these entries, designated simply as "Rutherford" *infra*, will be shown either disallowed *in toto* or reduced.  As for this particular entry, it is disallowed in its entirety (0.8 hours).  *See Wzorek v. City of Chicago*, 739 F.Supp. 400, 402 (N.D. Ill. 1990) (disallowing time spent discussing retainer agreement with clients).

•        11/3/03: Rutherford.  Disallowed (0.2 hours).

•        In total, 1.0 of the hours listed on page 1 are disallowed.

*Page 2*

•        The first entry (apparently for 2/25/04, see bottom of page 1): Rutherford.  Disallowed (0.2 hours).

•        2/27/04: Rutherford.  Moreover, much of this time was spent preparing for and meeting with members of the press; this time is not allowable.  *See Helfrich v. Carle Clinic Ass'n*,

328 F.3d 915, 919 (7th Cir. 2003) (disallowing time spent preparing press release).  To the
extent that any of the time in this entry would be allowable, it has been inappropriately
grouped with unallowable time; thus, the entire entry is disallowed (4.0 hours).
*Tomazzoli*, 804 F.2d at 96 (affirming reduction of hours where attorney listed several
tasks together and gave only a single total for the combined work); *Ohio-Sealy Mattress
Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 656 (7th Cir. 1985) (affirming reduction of hours
where fee petitions were "vague, inconsistent, and lacking adequate identification of
hours").

- 3/10/04, first entry: The one hour devoted to reviewing the status of service on the
  defendants is not only excessive, *Hensley*, 461 U.S. at 434 (holding that excessive time is
  unrecoverable), but is an attempt to charge an attorney's hourly rate for clerical work,
  *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999), and therefore
  will be disallowed in full (1.0 hours).

- 3/23/04, first entry: Clearly excessive and otherwise exhibits poor billing judgment.
  Reduced by 0.2 hours.

- In total, 5.4 of the hours listed on page 2 are disallowed.

*Page 3*

- 4/19/04, second entry: Rutherford, and besides, the time charged is grossly excessive.
  Disallowed (0.4 hours).

- 5/3/04, 5/7/04, and 5/10/04: Rutherford.  Disallowed (0.5, 0.4, and 0.4 hours).

- In total, 1.7 of the hours listed on page 3 are disallowed.

*Page 4*

• 6/4/04, second entry: Rutherford.  Disallowed (0.3 hours).

• 6/8/04: Rutherford.  Reduced by 0.4 hours.

• In total, 0.7 of the hours listed on page 4 are disallowed.

*Page 5*

• 7/2/04, fourth entry: Rutherford.  Disallowed (0.3 hours).

• In total, 0.3 of the hours listed on page 5 are disallowed.

*Page 6*

• 10/29/04: Rutherford; also, allowable time is inappropriately grouped with non-allowable time.  Disallowed (2.0 hours).

• In total, 2.0 of the hours listed on page 6 are disallowed.

*Page 7*

• 12/14/04: Excessive time was charged researching the "summary judgment standard." Although counsel maintains that briefing time was included in the overall 2.8 hours, he inappropriately grouped the work.  *Tomazzoli*, 804 F.2d at 96.  Reduced by 2.0 hours.

• In total, 2.0 of the hours listed on page 7 are disallowed.

*Page 8*

• 12/16/04, first entry: Excessive time devoted to research.  Reduced by 1.5 hours.

• 12/16/04, third entry: Excessive.  Moreover, much of this time appears to have been spent on ministerial tasks (*i.e.*, "filing and scanning") which could have been delegated to a non-professional, and thus it is not allowable.  *Spegon*, 175 F.3d at 553.  Reduced by 3.0 hours.

5

- 12/28/04: Time devoted to researching (8.1 hours) was excessive given that counsel had already devoted over 20 hours researching the same general topic earlier in the month. Reduced by 3.1 hours.

- 1/4/05: Ministerial tasks. *Spegon*, 175 F.3d at 553. Disallowed (0.5 hours).

- 1/11/05: Griggs's counsel concedes that some of the 6.0 hours claimed "could be trimmed." In any event, the time claimed is excessive and will be reduced by 1.7 hours.

- In total, 9.8 of the hours listed on page 8 are disallowed.

*Page 9*

- 1/14/05: This entry groups ministerial tasks with recoverable time. Although the Court could disallow the entire amount, only a reduction of 0.5 hours will be assessed.

- 1/31/05: Inappropriate charge for largely ministerial tasks. *Spegon*, 175 F.3d at 553. Reduced by 2.5 hours.

- 3/1/05: Ministerial tasks. *Spegon*, 175 F.3d at 553. Disallowed *in toto* (0.6 hours).

- In total, 3.6 of the hours listed on page 9 are disallowed.

*Page 10*

- The third entry (apparently for 3/10/05, see bottom of page 9): Rutherford, and also clerical in nature (faxing court order). Reduced by 0.2 hours.

- 3/11/05, second entry: Admittedly duplicates a previous entry. Disallowed (1.0 hours).

- 3/15/05: Rutherford. Reduced by 0.5 hours.

- 3/18/05 and 3/21/05: These two entries, totaling 3.5 hours, represent the time attorney Drier spent preparing his request for fees. Unfortunately, Drier's submissions to the Court on that issue do not reflect that investment of time and actually border on chaos. A

6

request for fees should be a simple matter, yet the record is cluttered with five separately-filed affidavits (Docket # 67, 68, 69, 77, 81), two separate motions for fees (Docket # 74, 76), and two bills of costs (Docket # 72, 78).  Many of these entries were duplicative or unnecessary, and occasionally unintelligible.  (*See, e.g.*, Docket # 67 ¶ 2 ("AAsAs a direct As a direct and proximate result of the behavior of the Fort Wayne Community School District,District, it has been necessary for David Nelson Griggs toDistrict, it has been necessary for David Nelson best interests.").)  In short, Drier's submissions have actually hindered the Court's resolution of the attorney-fees issue more than they have helped it; thus, the Court is unwilling to recompense him for the time spent on the matter.[1]  Moreover, much of this time represents ministerial tasks.  *Spegon*, 175 F.3d at 553.  Accordingly, both entries are disallowed (2.5 and 1.0 hours).[2]

- 4/22/04, second entry: This entry (described only as "Research review") is unacceptably vague, and thus it is disallowed (1.0 hours).  *Claus v. Goshert*, 657 F.Supp. 237, 244 (N.D. Ind. 1987) ("research time should be identified as to its purpose").

- In total, 6.2 of the hours listed on page 10 are disallowed.

*Page 11, 12, and 13*

- 6/17/04 and 6/18/04.  These entries are for attorney Sam Jarjour's preparation for and

---

[1]The Court is mindful that prevailing parties are generally entitled to recover fees for time spent preparing attorney fee motions. *E.g., Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 411 (7th Cir. 1999).  However, the Court has discretion to disallow such time when it is spent in an excessive or unreasonable manner, and for the reasons given above, the Court exercises that discretion here. *See Eli Lilly and Co. v. Zenith Goldline Pharm., Inc.*, 264 F.Supp.2d 753, 784 (S.D. Ind. 2003) (denying fees for work on fee petition which unduly "multipl[ied] work for [the opposing party] and for the court").

[2]In his reply brief (Docket # 83), Drier requests that he be allowed to file a supplemental affidavit as to his fee requests, although he does not explain why this is necessary.  The Court does not see why further documentation is necessary, and if history is any guide, it would actually be counterproductive.  His request is DENIED.

attendance at a deposition which was also attended by Drier.  The time is therefore duplicative and is disallowed (0.75 and 1.5 hours).  *Dechert v. The Cadle Co.*, No. IP01-880-C(B/G), 2004 WL 2999112, at *5 (S.D. Ind. Nov. 10, 2004) (disallowing fees for multiple attorney attendance at depositions).

• 5/26/03 and all entries thereafter: These entries all represent time spent by Rutherford attorneys Rita Dunaway and Steven Aden.  Dunaway and Aden never entered appearances in this case, nor are they even admitted to practice before this Court.  Much of their time was spent communicating with Drier about the terms of his representation or reviewing Drier's status updates, and as explained *supra*, that time is not allowable.  Moreover, what little substantive work they did on the case is described in unacceptably vague terms, such as "Research" or "Drafted discovery."  For all of these reasons, all of Dunaway and Aden's entries are disallowed (1.2 hours on page 11, 12.9 hours on page 12, and 0.2 hours on page 13).  *See, e.g., Claus*, 657 F.Supp. at 244.

• In total, 3.45 of the hours listed on page 11, 12.9 of the hours on page 12, and 0.2 of the hours on page 13 are disallowed.

Griggs claims a total of $37,841.25 in attorney fees.  The totals from the preceding analysis reveal that 49.25 hours of Griggs's claimed time is disallowed, meaning that $8,618.75 (49.25 hours x $175/hour = $8,618.75) must be subtracted.  Therefore, the Court sets the lodestar – the hours reasonably expended on the case multiplied by a reasonable hourly rate – at $29,222.50 ($37,841.25 - $8,618.75 = $29,222.50).

The Board raises objections to many more entries than those discussed above, but its

arguments as to those entries are not persuasive and do not merit discussion.  Thus, to the extent that the Board objects to any of the hours included in the Court's $29,222.50 lodestar, its objections are overruled.

### B. Adjusting the Lodestar to Reflect Griggs's Partial Success

Once the lodestar is set, the court may then adjust it based on various factors, *see People Who Care*, 90 F.3d at 1310 n.1, the "most critical" of which is the degree of success obtained by the plaintiff, *Hensley*, 461 U.S. at 436.  For instance, if the plaintiff "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," *id.* at 436, and thus the court has "considerable discretion" to reduce the lodestar accordingly, *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 559 (7th Cir. 1999).

Here, Griggs brought two claims: (1) that he should be allowed to wear a particular T-shirt to school; and (2) that a portion of the Board's dress code should be invalidated.  Griggs achieved the first objective but failed on the second.  Thus, the Court must consider whether to reduce the lodestar accordingly.

*Hensley* and its progeny contemplate two categories of partial-success cases:

The first category involves cases where the plaintiff presents distinctly different claims for relief that are based on different facts and legal theories. A plaintiff may not recover attorney's fees for time expended on an unsuccessful claim if the claim is distinct in all respects from his successful claims.

\*          \*          \*          \*

The second category of partial recovery cases [and what is present here] … includes those cases in which the plaintiff's claims for relief involve a common core of facts or are based on related legal theories. Because the majority of counsel's time will be devoted to the litigation as a whole, as opposed to any one specific claim, this type of lawsuit cannot be viewed as a series of discrete claims.

As a result, time spent on related claims that ultimately prove unsuccessful should not be automatically excluded from the attorney's fee calculation. Instead, the focus in arriving at the appropriate fee award should be on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

              \*          \*          \*          \*

Where the plaintiff fails to obtain all that he reasonably could have asked for and achieves only partial or limited success, the lodestar amount-- the product of the number of attorney's hours reasonably expended on the litigation as a whole times a reasonable hourly rate--is likely to be excessive. [Thus, a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. [I]n reducing a fee award to reflect the plaintiff's limited success, a district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award across the board to account for the limited success.

*Bryant v. City of Chicago*, 200 F.3d 1092, 1101 (7th Cir. 2000) (quoting *Spanish Action Comm. v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir. 1987) (internal citations omitted). This case does not fall into the first category, as it cannot be said that Griggs's claims were "distinct in all respects." Rather, this case is in the second category, particularly because Griggs's claims were "based on related legal theories" – that is, he relied on different aspects of the First Amendment in pursuit of both his claims.

Accordingly, the lodestar must be reduced if "the relief, however significant, [was] limited in comparison to the scope of the litigation as a whole." *Bryant*, 200 F.3d at 1101. Here, Griggs invested considerable research and argument into five failed theories for achieving his second objective, invalidating the dress code. He argued that the code (1) was overbroad under the First Amendment; (2) was unacceptably vague under the First Amendment; (3) was overbroad under the Indiana Constitution's Free Speech Clause; (4) violated the Fourteenth Amendment's Equal Protection Clause; and (5) violated the Indiana Constitution's Privileges

10

and Immunities Clause; yet, he failed on each count.  In contrast, Griggs's only successful argument was that his particular T-shirt could not be banned under the First Amendment.  Thus, compared to the broad legal attack he mounted in hopes of obtaining the far-reaching relief of striking down the dress code, he secured only very narrow, individualized relief based on one theory.  His attorney-fee award must be reduced accordingly.  *Id.*

The Court therefore turns to the question of how to reduce the award, and by how much. The Board suggests a piecemeal solution, *i.e.*, that many of the entries on Drier's time sheets should be reduced to reflect Griggs's partial success.  Throughout Drier's fee petition, the Board asks the Court to reduce time that Drier spent researching and drafting briefs, on the grounds that "a substantial portion of the time spent must have related to claims on which plaintiff lost." (*E.g.,* Docket # 83, Ex. 4 at 8.)  While such a line-by-line reduction would be the most precise way to account for Griggs's partial success, it is not a practicable solution, as Drier's billing entries are rarely specific enough to ascertain exactly how much time was spent on failed claims.

Accordingly, the Court must employ a simpler method.  Griggs had two objectives in this case, and he achieved one of them; in other words, he was 50% successful.  Therefore, the Court will reduce the lodestar by 50% to reflect his partial success.  *See Spegon*, 175 F.3d at 558-59 (affirming a similar 50% reduction); *Bryant*, 200 F.3d at 1101 ("[I]n reducing a fee award to reflect the plaintiff's limited success, a district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award across the board.").  Reducing the $29,222.50 lodestar by half, the total amount of recoverable attorney fees is $14,611.25.[3]

---

[3]Lest Griggs find this 50% reduction unduly severe, the Court is compelled to note that it is actually a rather generous way of accounting for his limited success.  Conceivably, another court might have looked at the issue differently and reduced the lodestar even more.  For example, one might argue that: (1) broadly speaking, Griggs relied on four constitutional theories in support of both of his claims (First Amendment, Fourteenth Amendment,

*C. Costs*

Griggs also claims that he is entitled to $1,500.80 in costs, for items such as court fees and deposition transcripts. The Board's objections to these items are unpersuasive, and thus the Court awards the entire $1,500.80.

**IV. CONCLUSION**

For the reasons given above, Griggs's motions for attorney fees and bills of costs (Docket # 72, 74, 76, 78) are GRANTED in the amount of $14,611.25 in attorney fees and $1,500.80 in costs. The Clerk is ORDERED to enter a judgment of $14,611.25 in attorney fees and $1,500.80 in costs in favor of Griggs and against the defendants.

Enter for this 13th day of May, 2005.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

Indiana Free Speech Clause, Indiana Privileges and Immunities Clause); and (2) only one of them (First Amendment) was successful; therefore (3) the lodestar should be reduced by 75% rather than 50%. Or, one could also argue that: (1) Griggs's successful claim, wearing a particular T-shirt to school, was minuscule in comparison to his unsuccessful claim, invalidating the school's dress code; and (2) $29,310 is an awful lot of money to pay an attorney for the privilege of wearing one particular T-shirt; thus (3) the lodestar should be reduced by 80% or 90%, since Griggs "was aiming high and fell far short," *see Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997).

Moreover, Griggs's argument against reducing the lodestar is remarkably weak. He makes only a conclusory assertion that his claims were "inextricably intertwined," which is not the legal standard at issue, and then supports the point by citing two cases from other circuits, neither of which even deals with attorney fees. (*See* Docket # 83 at 3.) Yet, as explained *supra*, even where a plaintiff's claims "involve a common core of facts or are based on related legal theories," a reduction is still appropriate where "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Bryant*, 200 F.3d at 1101 (internal citations omitted). Griggs gives no persuasive explanation why such a reduction is not appropriate here.